RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 26a0213p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

YARLEN HENRY, et al.,

*Plaintiffs*,

DAWN WORTHAM,

*Plaintiff-Appellant*,

    *v.*

CITY OF DETROIT, MICHIGAN,

*Defendant-Appellee*.

No. 25-1860

———————————

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:21-cv-12794—Jonathan J.C. Grey, District Judge.

Decided and Filed: August 3, 2026

Before: GILMAN, GRIFFIN, and READLER, Circuit Judges.

———————————

## COUNSEL

**ON BRIEF:** William M. Haggerty, Detroit, Michigan, for Appellant. Jason McFarlane, CITY OF DETROIT, Detroit, Michigan, for Appellee.

———————————

## OPINION

———————————

READLER, Circuit Judge. When Dawn Wortham lost her job with the Detroit Police Department, she sued the City of Detroit, alleging that the City discriminated against her in violation of the Americans with Disabilities Act. The district court dismissed one of her claims at summary judgment, and a jury rebuffed the remainder at trial. Seeing no error in either resolution, we affirm.

I.

While employed as a patrol officer with the Detroit Police Department, Wortham sustained injuries to her back and legs in an off-duty car accident. To facilitate Wortham's recovery, the Department's medical section changed Wortham's employment status from "full duty" to "restricted duty." In her "restricted" status, Wortham took on clerical roles subject to various limitations—no guns, no patrolling, no heavy lifting, and the like.

Over the course of several years, the medical section learned that Wortham's restrictions were likely permanent. Department policy required that the City retire an officer with permanent restrictions that prevent her from performing the essential duties of a patrol officer. In line with that policy, Wortham's superiors recommended her retirement. The City's pension board, however, decided not to enforce the policy against Wortham.

Wortham's years on restricted duty eventually came to an end. In 2018, an independent medical exam cleared Wortham to return to full duty with modest restrictions. But in the course of returning to her former employment status, Wortham began complaining of psychological distress brought on by the prospect of having to work a full-duty position in her physical condition. A City psychiatrist initially deemed Wortham fit for full duty. But as Wortham's protests increased, the psychiatrist recommended that she take sick leave, which she did.

Eventually, Wortham returned to work again in a restricted-duty job. Yet challenges remained. Over time, Wortham raised a series of grievances regarding overtime hours, the medical section's handling of her case, and her working conditions. Making matters worse, Wortham sustained injuries to her back in yet another motor vehicle accident in early 2021, causing the City to place her on an extended sick leave. In late 2021, Wortham (along with a group of retired City officers) filed suit against the City under the Americans with Disabilities Act, alleging that the City discriminated against them by engaging in intentional discrimination and by failing to accommodate their disabilities. *See* 42 U.S.C. § 12112(a), (b)(5)(A).

In early 2022, the medical section received word that an independent medical examiner cleared Wortham to return to work. Upon learning of Wortham's change of status, her commander ordered Wortham to report to work or, alternatively, provide updated documentation

to support a disability claim.  When Wortham did not respond, officers visited Wortham with a warning that if she did not follow orders, she would be fired.  Wortham eventually reported to the medical section.  But when she did, she failed to bring in current medical forms.  The only forms on file at the time referred to prior injuries for which Wortham had just been cleared.  By mid-May, Wortham, who was repeatedly calling in sick to avoid returning to work, still had not provided the requested medical documentation.  Nor had she reported for duty.  Deciding enough was enough, the City opted to terminate Wortham's employment on grounds of failure to report for duty.  Days after receiving her termination letter, Wortham's doctor faxed forms to the medical section indicating that Wortham was incapable of performing most functions of a police officer.

These developments prompted Wortham to file a second ADA lawsuit in federal court.  This time, Wortham accused the City of terminating her employment in retaliation for her having complained to the City over its handling of her accommodation requests.  The district court consolidated that case with her initial lawsuit, and Wortham rolled her claims into one amended complaint.  Following discovery, the district court granted the City summary judgment on Wortham's retaliation claim, leaving for trial Wortham's remaining ADA claims for intentional discrimination and failure to accommodate.  For both claims, Wortham framed her case around the City's alleged wrongdoing stemming from the City ordering her back to work in 2022 and her ensuing termination.  At the trial's close, the jury found for the City on those claims.  Dissatisfied with that result, Wortham retained additional counsel, at which point she moved for judgment in her favor as a matter of law or for a new trial.  The district court denied Wortham's post-trial motions, leading to this appeal.

## II.

Wortham presents four arguments for our consideration.  First, that the district court erroneously awarded the City summary judgment on her retaliation claim.  Second, that no reasonable jury could have sided with the City on Wortham's failure to accommodate and intentional discrimination claims.  Third, that the district court misstated the law when instructing the jury. And fourth, that the City engaged in fraudulent conduct at trial.

A.  Start with Wortham's retaliation claim, which failed at the summary judgment stage. Summary judgment is appropriate if the City shows "that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We apply de novo review to the district court's decision, viewing the facts and all reasonable inferences therefrom in Wortham's favor.  *Bowles v. SSRG II, LLC*, 162 F.4th 716, 719 (6th Cir. 2025).  As to the scope of the facts that we may consider, we limit our review to the evidence before the district court "at the time of its ruling" and do not consider evidence later adduced at trial.  *Meridian Leasing, Inc. v. Assoc. Aviation Underwriters, Inc.*, 409 F.3d 342, 346 (6th Cir. 2005).

In the employment setting, the ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability."  42 U.S.C. § 12112(a).  That liability extends to employers who retaliate against anyone who "has opposed" an ADA violation.  *Id.* § 12203(a).  Wortham's retaliation claim rests on that latter prohibition.

Because Wortham has no direct evidence of retaliation, we apply the familiar *McDonnell Douglas* framework to measure her claim.  *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013).  Under that rubric, Wortham has the initial burden to establish four things.  One, that she engaged in ADA-protected activity.  Two, that the City knew about that activity.  Three, that the City took adverse action against her.  And four, that the adverse action had a causal connection to the protected activity.  *See id.*  If Wortham makes that prima facie showing, the burden shifts to the City to articulate a "legitimate, non-discriminatory basis" for the adverse action.  *Id.*  If it does, the burden shifts back to Wortham to prove that the City's proffered reason was mere "pretext."  *Id.*

Assuming without deciding that Wortham had made out a prima facie case based on the City's adverse action of terminating her employment, the district court concluded that the City had successfully rebutted Wortham's retaliation theory.  To that end, the City explained, Wortham repeatedly refused to report for duty in the weeks leading up to her firing, which gave the City compelling, non-discriminatory grounds for termination.  *See Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 397 (6th Cir. 2017).  Because Wortham failed to come back

with evidence suggesting that her absenteeism was not the City's true rationale, the district court granted the City summary judgment.

At the outset, it is not at all clear that the district court needed to assume that Wortham had demonstrated a prima facie case of retaliation with respect to the causation element. Wortham engaged in various forms of protected activity over a span of years. *See, e.g.*, R.74-18, PageID 1767 (2015 EEOC complaint); *id.*, PageID 1770 (2018 EEOC complaint); R.74-8, PageID 1574 (2019 union grievance); R.1 (original 2021 lawsuit). Yet through it all, she remained on the force. To our eye, the fact that Wortham retained her employment during her "long history" of "contentiousness" "demonstrates [the City's] willingness to retain employees who engage in protected activity, not a propensity to retaliate against them." *Mittman v. City of Toledo*, 156 F.3d 1231, 1998 WL 465406, at *4 (6th Cir. 1998) (table); *see Coleman v. Bowerman*, 474 F. App'x 435, 438 (6th Cir. 2012); *Brandon v. Kinter*, 938 F.3d 21, 42 (2d Cir. 2019); *Smith v. Sec'y, Fla. Dep't of Corr.*, 696 F. App'x 944, 952 (11th Cir. 2017); *Shah v. Am. Airlines, Inc.*, No. 22-2599, 2023 WL 2945901, at *3 (3d Cir. Apr. 14, 2023) (per curiam); *Stites v. Alan Ritchey, Inc.*, 458 F. App'x 110, 112 (3d Cir. 2012). That reality makes proving a causal connection between those acts and Wortham's termination a tall order.

But even had Wortham proved her prima facie case, we agree with the district court that she comes up short in her effort to demonstrate that the City's purported reason for her termination was pretextual. One way she can demonstrate pretext is by showing that the City's stated basis did not actually motivate the City's decision to fire her. *See Sharp v. Profitt*, 674 F. App'x 440, 446 (6th Cir. 2016) (citing *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 704 (6th Cir. 2007)). Chiefly, Wortham argues that the City was aware of her limitations yet ordered her to return to full duty, which Wortham was unable to accomplish. And by deliberately ignoring Wortham's efforts to explain herself, she contends that the City manufactured her ensuing termination, allegedly in retaliation for Wortham's earlier complaints regarding the City's handling of disability claims.

The summary judgment record tells a different story. In early 2022, an independent medical exam indicated that Wortham could return to full duty. A few months later, Wortham's commander received an email from the Department's medical section noting that Wortham's

status had changed to reflect her ability to work.  Wortham was therefore ordered to report for duty and to provide medical documentation for any claimed restrictions.  Days passed, yet Wortham never showed.  Eventually, officers visited Wortham at her home to warn her that her continued absenteeism would result in termination.  Wortham reported to the medical section a few days later.  But when she did, she failed to bring documentation of her restrictions.  In the days that followed, Wortham repeated the process of showing up to the medical section without proper documentation.   By mid-May, Wortham had still not provided the necessary documentation.   At this point, Wortham's commander recommended that the police chief terminate Wortham's employment.   Nine days later, officers hand-delivered Wortham's termination letter.  On these facts, the district court rightly concluded that the City "made a reasonably informed and considered" determination that Wortham should be fired for failing to present the requested medical documentation. *A.C.*, 711 F.3d at 705 (citation modified).

Wortham disputes this telling.  As she sees things, she did comply with the City's request for documentation, yet the City pushed her out anyway.  The only medical documents on file with the City at the time of the adverse action, however, addressed conditions for which the "medical section had previously cleared" Wortham.  R.72-40, PageID 1231.  True, Wortham did obtain a report from her primary care doctor detailing her more recent physical limitations.  But her doctor completed the report *after* the City had fired Wortham.  In fairness to the City, we evaluate its decision with an eye on "the particularized facts that were before it at the time the decision was made." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001) (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)).  That respects the "honest belief" rule, which wards off a finding of pretext if the City "made a reasonably informed and considered decision before" terminating Wortham. *A.C.*, 711 F.3d at 705 (quoting *Smith*, 155 F.3d at 807).  Because the City "reasonably and honestly relie[d] on [the] particularized facts" in front of it when it decided to terminate Wortham, we do not play Monday-morning quarterback with the benefit of evidence developed only later down the line. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 401 (6th Cir. 2009) (citation modified).

Wortham next contests the decision to return her to full duty on the thesis that the provider who signed off on her return was only a psychiatrist.  Because no one cleared her to

work from a physical-capabilities perspective, she reasons, the medical section returned Wortham to full duty by mistake. Even if a mistake was made, however, Wortham concedes that no one advised her superiors of that error. So as far as "any relevant decisionmakers" were aware, Wortham had for weeks refused to provide the relevant medical documentation to justify her claim of accommodation. *Beny v. Univ. of Mich.*, No. 24-1674, 2025 WL 2124175, at *8 (6th Cir. July 29, 2025) (citing *Escher v. BWXTY-12, LLC*, 627 F.3d 1020, 1030 (6th Cir. 2010)); *Smith v. Towne Props. Asset Mgmt. Co.*, 803 F. App'x 849, 852–53 (6th Cir. 2020). Here again, the decision to fire Wortham, mistaken or not, finds support in the honest belief rule. *See A.C.*, 711 F.3d at 705.

Wortham's remaining evidence of pretext fares no better. She contends that the City violated its own internal policies as well as its collective bargaining agreement by terminating her without sufficient notice. Even if that is the case, the City's failure to follow self-imposed regulations, standing alone, does not suggest pretext. *See Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 896 (6th Cir. 2020). In other words, absent evidence that the City, for instance, applied the same rules "differently" to other employees in like circumstances, a break from internal rules tells us very little. *Id.* Wortham supplies no evidence of that sort here.

Wortham also portrays the City's recommendation in 2015 to retire her under non-duty disability as evidence of the City's unlawful intent. But because that recommendation occurred seven years before Wortham's termination, it says very little about the more recent events at issue here. *Cf. Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (per curiam) (holding that conduct from "years earlier" "suggests . . . no causality at all" (citation modified)). What is more, the pension board rejected the City's recommendation. And in the years that followed, the City tried to work out a resolution to her job-related issues.

Lastly, in her reply brief, Wortham argues that her placement on sick leave in 2018 by the City's psychiatrist amounted to an adverse action. But because she never advanced the point as part of her retaliation claim in district court, which was based on her 2022 firing, it is forfeited. *See Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1011 (6th Cir. 2022).

B. Turn next to Wortham's failure to accommodate and intentional discrimination claims, which the jury rejected. Wortham deems that outcome unreasonable based on the evidence that she presented at trial. Although Wortham is not entirely clear on the point, we assume that she is contesting the district court's denial of both her Rule 50(b) motion for judgment as a matter of law and her Rule 59(a) motion for a new trial. We review de novo the denial of her motion for judgment as a matter of law, reversing only if, viewing the evidence in a light most favorable to the City, no reasonable jury could have decided in the City's favor. *See Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1072 (6th Cir. 2014). In conducting that review, it bears reminding that we do not "weigh the evidence, question the credibility of witnesses, or substitute our judgment" for the jury's. *Id.* Separately, we review the denial of her motion for judgment as a matter of law under the abuse of discretion standard. *Klopfenstein v. Fifth Third Bank*, 177 F.4th 753, 765 (6th Cir. 2026). That leaves a high hurdle for Wortham to clear. Given the trust that we place in the jury system, Wortham is deserving of a new trial only if the jury's verdict went "against the manifest weight of the evidence." *Id.* (citation modified).

1. For Wortham to establish a prima facie case for her accommodation claim, she needed to prove five things: that she was disabled under the ADA; she was otherwise qualified for her position, with or without a reasonable accommodation; the City knew or should have known about her disability; she requested an accommodation; and the City failed to provide the necessary accommodation. *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 839 (6th Cir. 2018). To that end, Wortham asserted at trial that the City rebuffed her requests for accommodation when it called her back to work in 2022. Although the district court identified several ways in which the jury could have rejected that theory, we need single out only one to affirm.

Top of mind is Wortham's failure to properly request an accommodation. Understandably, the ADA does not obligate an employer "to provide accommodation until the [employee herself] ha[s] provided a proper diagnosis of her disability and requested a specific accommodation." *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 670 (6th Cir. 2020) (quoting *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 437 (6th

Cir. 1998)) (citation modified). In other words, an employer is under no obligation to craft an accommodation for an employee who has never asked for one. Nor, if a request is made, must an employer simply "take [her] word for it." *Kennedy v. Superior Printings Co.*, 215 F.3d 650, 656 (6th Cir. 2000) (citation modified). Rather, the employer is entitled to ask the employee to verify her diagnosis. If the employee flouts that "request," such as by failing to "submit medical forms," she cannot claim that her employer "denied her requests for accommodations." *Kirilenko-Ison*, 974 F.3d at 670.

As the trial record reveals, Wortham failed to heed the City's request for medical documentation. The medical section needed current medical information before an accommodation could be crafted. Wortham was asked multiple times to bring medical forms for that reason. And Wortham was warned that the failure to do so would result in her termination. Despite those warnings, Wortham never returned to work on full duty and simultaneously never provided updated medical information until after she was fired. All things considered, her failure to "provide verification" of her claimed disabilities means she did not properly initiate the process to receive an accommodation. *Id.*

Wortham counters that she took other steps in an attempt to document her injuries and request an accommodation. At most, those efforts demonstrate that she repeatedly objected to her full-duty status and that she wanted the City to evaluate her for physical impairments. The terms of Wortham's employment, however, put the onus on her to provide medical forms first. *See id.* Without those documents, Wortham's unsubstantiated complaints did not require the City to provide her an accommodation. And although Wortham seemingly intended to honor this obligation, the promised documentation came too late. By then, Wortham's repeated failures had led to her firing. *See Kennedy*, 215 F.3d at 656. In short, the jury had ample evidence to reject Wortham's failure to accommodate claim.

2. Wortham's intentional discrimination claim meets a similar fate. She contends that the City fired her because of her disability. To prevail on that narrative, Wortham had to convince the jury of the following. She is disabled. She is otherwise qualified for the job. The City took adverse action against her. The City knew about her disability. And her position remained open or she was replaced. *Edwards v. Shelby County*, 159 F.4th 489, 498 (6th Cir.

2025). If she did, and if the City offered a non-discriminatory reason for its actions, Wortham would have had to show that the City's reason was pretextual. *See Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015).

At trial, the City cited Wortham's failure to submit necessary medical documentation as the basis for her firing. That rationale mirrors the basis on which the City prevailed at summary judgment with respect to Wortham's retaliation claim. Hence, the parties treat both claims as having overlapping pretext analyses, as did the district court. Because the trial record is just as favorable to the City as the summary judgment record, Wortham's evidentiary challenge likewise fails.

Start with the fact that, as noted, Wortham ignored the City's warnings that failure to report for duty or provide medical forms justifying her absence would result in termination. Yet Wortham's doctor did not prepare those forms until after she was fired. As for Wortham's assertion that the City had cleared her for full duty by mistake, her commander disputed that assertion. *See Beny*, 2025 WL 2124175, at *8 (citing *Escher*, 627 F.3d at 1030). And as for her various pretext arguments, she offered no new, notable facts on the matter at trial. On this record, a jury could easily have found that Wortham had not met her burden on pretext. *See A.C.*, 711 F.3d at 705.

C. Stepping away from the trial evidence, Wortham shifts to a legal argument that the district court gave the jury erroneous instructions. Because Wortham failed to object to those instructions in district court, we review this argument at our discretion and only if we find plain error. *See Barnett v. Smithwick*, 835 F. App'x 31, 34 (6th Cir. 2020) (citing Fed. R. Civ. P. 51(d)(2)); *EEOC v. New Breed Logistics*, 783 F.3d 1057, 1075–76 (6th Cir. 2015)). That means we will reverse only if Wortham demonstrates "an 'error or defect—some sort of deviation from a legal rule' that is 'obvious and prejudicial,' and 'requires action by the reviewing court in the interest of justice.'" *Barnett*, 835 F. App'x at 34 (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)) (citation modified); *see New Breed Logistics*, 783 F.3d at 1075–76.

She has not done so. Wortham asserts that the instructions wrongfully precluded the jury from considering certain documents as formal requests for accommodation. But Wortham does

not direct us to any purported flawed instruction, let alone explain how it prevented the jury from considering the documents at issue.  For our part, we do not scour the record to devise an argument for Wortham when she has failed to meaningfully do so herself.  *See Brenay v. Schartow*, 709 F. App'x 331, 337 (6th Cir. 2017).

Wortham also takes issue with what she sees as the jury instructions' inaccurate description of the burden of proof for her failure to accommodate claim in that the instructions permitted the City to assert a "legitimate business purpose" defense.  Appellant Br. 56–57.  Again, Wortham fails to identify the offending instructions, and none to our eye refer to "legitimate business purpose."  Wortham might be contesting the district court's "undue hardship" instruction, which allowed the City to prevail if it could prove by a preponderance of the evidence that accommodating Wortham's disability "would cause an undue hardship on the operation of [the City's] business."  R.122, PageID 3185–86.  If so, the jury instructions correctly explained that statutory defense.  *See* 42 U.S.C. §§ 12111(10)(B), 12112(b)(5)(A).

D.   Finally, Wortham asserts that the verdict is a product of the City's fraud at trial.  According to Wortham, one of the City's witnesses falsely testified that Wortham had faced previous discipline for abusing sick time.  Wortham also accuses the City's lawyers of fraudulently concealing alleged misconduct by the medical section.  As a remedy, Wortham seeks relief from judgment under Rules 60(a) and 60(b).

Wortham's fraud theory has multiple flaws.  Start with her request for relief under Rule 60(a).  That argument fails because the provision deals only with "clerical mistake[s]" or "mistake[s] arising from oversight or omission," not the intentional misconduct claimed by Wortham.  *See* Fed. R. Civ. P. 60(a).

As for Rule 60(b), we take Wortham to be seeking relief under Rule 60(b)(3), which allows a court to "relieve a party . . . from a final judgment" in instances of "fraud[,] . . . misrepresentation, or misconduct by an opposing party."  Fed. R. Civ. P. 60(b)(3).  Wortham was required to raise this issue first with the district court.  *See* 11 *Wright & Miller's Federal Practice & Procedure* § 2860 (3d ed. 2026); *Blank v. Cox*, 230 F.3d 1357, 2000 WL 1435014, at

*2 (6th Cir. 2000) (table).  Yet as she acknowledges, her post-trial motions never accused the City of fraud.  So the issue is not preserved for our review.  *See Bannister*, 49 F.4th at 1011.

Wortham's Rule 60(b)(3) argument has yet another threshold flaw, similar to the first.  If the City committed misconduct at trial, as she suggests, Wortham was not entitled to sit on her hands and wait for the verdict, only to later cry foul in the event the jury found against her.  *See Jones v. Ill. Cent. R.R. Co.*, 617 F.3d 843, 851–52 (6th Cir. 2010) (rejecting a Rule 60(b)(3) motion because plaintiff "fail[ed] to move for a mistrial" in response to alleged "fraud on the court").  Unless Wortham sought "corrective action" prior to the verdict (typically by requesting a mistrial), her decision to forge ahead "waived Rule 60 relief."  *Id.* at 851–52.  Just so here.  Despite accusing the City of various forms of fraud today, at no time did Wortham move for a mistrial in district court.  Nor do we see any indication in the record entries that Wortham cites where she took issue with what she now portrays as the City's misconduct.  By declining to "seek a new trial" when the "potential prejudice" was already "apparent" in the moment, Wortham "bet on the jury."  *Id.* at 852.  And though that bet proved "unwise," "Rule 60 was not intended to relieve counsel of the consequences of decisions deliberately made."  *Id.* at 851 (quoting *Cacevic v. City of Hazel Park*, 226 F.3d 483, 491 (6th Cir. 2000)).

Wortham asks us to excuse these various oversights.  After losing at trial, Wortham notes, she retained new counsel to litigate her post-trial motions and this appeal (though it appears that her trial counsel did not withdraw).  Her new counsel, she adds, needed time to review the trial transcripts.  Yet because the transcripts were not filed before the post-trial motion deadline, and because the district court denied Wortham's request to have supplemental briefing after that time, Wortham believes that her new counsel was not afforded a chance to raise the issue.  Perhaps so.  But waiver and forfeiture, it bears emphasizing, apply to a party, not just his or her lawyers.  *Bannister*, 49 F.4th at 1011.  And a party is "deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney."  *New York v. Hill*, 528 U.S. 110, 115 (2000) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 (1962)) (citation modified).  Taking these principles together, both Wortham's trial counsel's familiarity with the City's conduct at trial and her counsel's failure to act on that knowledge are imputed to Wortham.  Wortham's choice to employ an additional lawyer does not

get her out from under that result.  *See Erhart v. Sec'y of Health & Hum. Servs.*, 969 F.2d 534, 537 n.6 (7th Cir. 1992).

These numerous procedural shortcomings aside, the fact remains that Wortham's fraud allegations speak entirely to the merits of her case.  Case in point, she repeatedly labels the City's evidence false based on the contrary evidence that she marshaled at trial.  That smacks of "an attempt to relitigate [her] case," *Wright & Miller*, *supra*, § 2860, something Rule 60(b) understandably does not allow, *see Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 385 (6th Cir. 2001).

\* \* \* \* \*

We affirm.